# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AVA S. VAUTHIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-298-JHP-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Ava S. Vauthier requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born April 18, 1974, and was thirty-seven years old at the time of the administrative hearing (Tr. 35). She completed one year of college, and has worked as a receptionist (Tr. 20, 251). The claimant alleges that she has been unable to work since September 1, 2008, due to lupus (Tr. 246).

## Procedural History

On August 20, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Larry D. Shepherd conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 20, 2012 (Tr. 15-22). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform sedentary work, *i. e.*, she could lift/carry ten pounds occasionally and frequently, and stand/walk two hours in an eight-hour workday. The ALJ imposed the additional limitations of only occasionally climbing ramps/stairs, balancing, stooping, kneeling, and crouching; never

crawling or climbing ladders, ropes, or scaffolding; frequently fingering; and avoiding concentrated exposure to direct sunlight and hazards such as unprotected heights and heavy machinery. He stated that the claimant could understand, remember, and carry out simple, routine, and repetitive tasks; respond appropriately to supervisors, co-workers, and usual work situations; have occasional contact with the general public; and perform low-stress work (Tr. 19). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work in the regional and national economy that she could perform, *e. g.*, bench worker, addressor, and assembler (Tr. 21).

### Review

The claimant contends that the ALJ erred (i) by failing to properly evaluate and reconcile two differing consultative examiner opinions, and (ii) by failing to include all her impairments in his RFC assessment. Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner should be reversed.

The medical evidence reveals that the claimant had the severe impairments of lupus, fibromyalgia, back disorder, carpal tunnel syndrome, right knee disorder, headaches, obesity, and depressive disorder (Tr. 17). The claimant was diagnosed with chronic systemic lupus erythematosus, which would flare up, and has a fair prognosis (Tr. 301, 311, 395-396, 480). In May 2010, the claimant began physical therapy to treat her knee that she injured in a fall in February 2010. Upon discharge to another facility, the physical therapist noted that the claimant had moderate difficulty walking, standing, and

doing laundry, due to pain (Tr. 601). She was referred for pain management in September 2010, for knee pain, lupus, arthritis, and wrist pain (Tr. 921). She received Kenalog injections in her right knee on August 24, 2010, and on December 17, 2010 (Tr. 1143, 1151). The claimant was also treated for diffuse alopecia as a side effect of her lupus (Tr. 1170-1171, 1197).

In April 2010, the claimant presented for counseling to Southwest Behavioral Health Services. Upon assessment, her Axis I diagnosis included mood disorder, NOS, and partner relational problem, and she was assessed a GAF of 70 (Tr. 637-638). She then moved to Oklahoma and began counseling at Creoks Behavioral Health Services. Upon assessment, she was diagnosed with major depressive disorder, generalized anxiety disorder, and assessed a GAF of 50 (with a GAF of 45 as the highest in the past year) on September 22, 2011 (Tr. 1180-1181). In November 2011, a Progress Note stated that the claimant's lupus was in good control but that she still experienced flares, that her crying spells were better and she was sleeping more (Tr. 1183).

Brent B. Geary, Ph.D., conducted a mental status examination on June 30, 2010. His diagnostic impression was that the claimant had dysthymic disorder of late onset, mild to moderate; maladaptive health behavior (diet) affecting medical conditions (morbid obesity, arthritis, lupus); partner relational problem; and nicotine dependence, severe (Tr. 648). He indicated that she had difficulty admitting that she was depressed, and further exhibited difficulty with short-term recall (Tr. 649). She maintained concentration, but her pace was slow, and she was weak in calculation, comparative thinking, expression of common sense reasoning, and abstraction (Tr. 648-649). As for

work performance, he stated that she would need reminders regarding complicated matters, and would require some prompting and supervision on a job, was moderately limited in adaptation, and somewhat reduced in her capacity to cope with customary work stress and that her slowed pace would cause mild difficulties with the timely completion of work duties (Tr. 649). He gave her a guarded prognosis, in light of her uncertain physical status (Tr. 649).

A state reviewing physician found that the claimant could respond to simple three-step instruction and was able to understand and remember simple tasks, but that she did have sustained concentration and persistence limitations. He indicated that she was markedly limited in the ability to carry out detailed instructions, and moderately limited in the ability to understand and remember detailed instructions, carry out very short and simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, and set realistic goals or make plans independently of others. He concluded that the claimant would be able to adapt to changes in a simple work environment (Tr. 93-94).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence. As relevant to this appeal, the ALJ pointed out three times

in the record that the claimant told her treating physician that she was doing well, as well as a 2008 ER report where she had normal range of motion and only slight effusion in her right knee. He summarized a physical consultative examination report without analysis, then found the claimant not credible in a boilerplate statement. Finally, he adopted the opinions of the state reviewing physicians "[t]o the extent that they do not conflict with the above-residual functional capacity" (Tr. 20). He gave these opinions great weight, finding that they were well supported by medically acceptable clinical and laboratory findings, and consistent with the entire medical record (Tr. 20).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) [quotation

marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ failed to even mention, much less discuss, the majority of the medical record. He failed to even acknowledge Dr. Geary's consultative examination or any of the records relating to the claimant's mental impairments. Indeed, most of the analysis at step four seemed an attempt to undermine the claimant's complaints related to her severe physical impairments, essentially calling into question the findings of severity at step two. What the ALJ should have done instead was provide an explanation as to how impairments found to be severe at step two became so insignificant as to require no corresponding limitations in the RFC at step four. *See, e. g., Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."). Additionally, he assigned great weight to the opinions of the state reviewing physicians (whose opinions he did not specify or cite to), but only to the extent such opinions did not disagree with his formulated RFC. Unfortunately, he provided no basis for, nor discussion of, those differences and his reasons for why his findings would differ from opinions that he assigned great weight. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v.*

*Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Because the ALJ engaged in improper picking and choosing to discredit evidence that was inconsistent with his RFC determination, the Court cannot find that he performed the proper analysis. *See, e. g., Drapeau*, 255 F.3d at 1214 (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hamby*, 260 Fed. Appx. at 112 (noting that when determining a claimant's RFC, the ALJ "must 'consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less' and a failure to do so 'is reversible error.'") [unpublished opinion], *quoting Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand

the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

      **DATED** this 10th day of September, 2014.

                                                                      _____
                                                                      **STEVEN P. SHREDER**
                                                                      **UNITED STATES MAGISTRATE JUDGE**